**In re PILOT RADIO & TUBE CORPORATION.**

No. 53280.

District Court, D. Massachusetts.

Dec. 14, 1933.

Charles B. Rugg, of Boston, Mass., for Bay State National Bank.

Frank H. Pardee, of Boston, Mass., for trustees for bankrupt.

McLELLAN, District Judge.

Richard Ward, J. Rodney Ball, and James H. Eaton filed a petition seeking to have the lien of a certain mortgage attached to funds in the hands of the trustees in bankruptcy received from a sale of the assets of the bankrupt. After a hearing, the referee entered an order dismissing the petition. The petitioners applied for a review, and the matter comes before me upon the referee's certificate and report, including certain exhibits made a part of the report by reference.

The question certified is whether the

mortgage, under which the mortgagees claim a lien on the funds in the trustees' hands, was void as to the trustees in bankruptcy of the mortgagor, the bankrupt in these proceedings.

On or about August 11, 1932, an agreement was entered into between the petitioners, Ward, Ball, and Eaton, and the Pilot Radio & Tube Corporation, the present bankrupt, which recited in substance that this corporation was indebted to the Bay State National Bank of Lawrence on account of certain notes held by the bank and desired that the bank refrain from pressing for immediate payment upon their becoming due; that the bank was willing to refrain from making demand for payment of the notes when they were due and was presently willing to extend the time for renewal of the notes, provided the bank should be given some added measure of collateral and protection; that the corporation was desirous of obtaining a loan of $50,000 from the Essex Savings Bank; that the Essex Savings Bank was willing to make such a loan, provided additional security or protection should be received; that the banks and the corporation were agreed that a mortgage of all the corporation's tangible personal property should be executed as such additional collateral or protection; that both the banks and the corporation desired that the mortgage should run to private individuals as trustees for the banks; that said Ward, Ball, and Eaton had been selected as such trustees; and that a chattel mortgage was in the process of being executed by the corporation to said trustees simultaneously with the execution of the agreement. Such, in substance, were the introductory portions of the contract, which was under seal. The contract contained the following covenants:

"Said Trustees shall hold said chattel mortgage for so long a period of time as said corporation shall continue to be indebted to the said Bay State National Bank, and for so long a time as said corporation shall continue to owe said Essex Savings Bank any part of the said fifty thousand dollar ($50,000) loan this day made by said Essex Savings Bank to said corporation; but when said corporation shall cease to be indebted to the said Bay State National Bank and shall have paid off said fifty thousand dollar ($50,000) loan to said Essex Savings Bank and be entitled to a discharge of its mortgage of real estate which it has this day executed to said Essex Savings Bank, then the Trustees shall promptly execute and deliver to the corporation a discharge of said chattel mortgage. If said corporation shall, however, default on any payment of interest when due to either of said banks or if it shall fail to make any payment of principal on account of its obligation to either of said banks when either of said banks shall demand such principal payment, or if said corporation shall fail to perform any of the conditions mentioned in said chattel mortgage, then the Trustees shall be authorized to take such action as is permitted by said chattel mortgage, including the right to foreclose the same, and they shall thereafter divide the proceeds of such foreclosure sale between the said banks in such proportion as the said two banks may then agree upon.

"And the corporation promises the Trustees that it will pay said banks as demanded all sums which it may owe said banks, that in the meantime it will promptly pay all interest charges thereon and will faithfully and punctually do and perform all of the terms, covenants and conditions contained in said real estate mortgage of even date and in said chattel mortgage to be done and performed by the mortgagor, that it will promptly pay to said Trustees whatever expenses said Trustees may be put to on account of these premises, together with a reasonable compensation for the service rendered by said Trustees."

Simultaneously with the execution and delivery of the foregoing contract, the Pilot Radio & Tube Corporation, pursuant to a vote of its board of directors, executed an instrument in the form of a personal property mortgage, reciting a consideration of $1 and other valuable considerations paid by Richard Ward, J. Rodney Ball, and James H. Eaton, and transferring to them all its tangible personal property in Lawrence, "in trust nevertheless, under the terms of a certain agreement dated this day and executed by the said Ward, Ball and Eaton, and by said Pilot Radio & Tube Corporation." This instrument contained a proviso "That if said Pilot Radio & Tube Corporation, or its successors or assigns, shall perform all the duties required of it by the terms of said agreement of even date, and pay said 1931 taxes, as aforesaid," etc., "then this deed shall be void." It was provided that upon any default in the performance or observance of the aforesaid duties and conditions, or upon the failure to pay said 1931 taxes aforesaid, the vendees or their assigns might sell the property at auction under certain conditions, and retain all sums necessary to carry out the

performance of the duties required to be performed under the agreement of even date, and pay any surplus to Pilot Radio & Tube Corporation.

This case, as counsel have agreed in open court, involves no question of a preferential payment or of any transfer in fraud of creditors.

■ The referee's report indicates that he regarded the mortgage as invalid and void for want of consideration, a conclusion with which I do not agreed. A personal property mortgage is, of course, a conveyance, and as such does not need to be supported by any such consideration as is essential to a contract not under seal. No authority is required in support of the proposition that a personal property mortgage is valid if given by way of security for an antecedent and existing debt. Nor, as I view it, does it make any difference whether the mortgage is given by the debtor to the creditor, or by the debtor to some person as trustee for the creditor. Nor am I able to adopt the argument made this morning by counsel for the trustee in bankruptcy that since neither of the banks was named as a party to either of the instruments, they cannot be regarded as the beneficiaries of any trust.

■ The question as to whether the mortgage is void because the terms of Massachusetts General Laws (Ter. Ed.) c. 255, § 1, applying to the recording of mortgages of personal property, were not complied with, presents, as it seems to me, greater difficulty. This section reads in substance, so far as applicable to this situation, as follows: "Mortgages of personal property shall, within fifteen days from the date written in the mortgage, be recorded on the records of the town where the mortgagor resides when the mortgage is made, and on the records of the town where he then principally transacts his business. * * * The mortgage shall not be valid against a person other than the parties thereto until so recorded; and a record made subsequently to the time limited shall be void. This section shall apply to bills of sale given for security, but shall not apply to assignments which transfer the title of a lessor or conditional vendor to a lease or other instrument containing a conditional sale agreement and to the personal property therein described. If the condition for redemption of the property included in such bill of sale is in writing, it shall be recorded with and as a part of the bill of sale; if the condition for redemption is oral, a written statement of such condition signed by the mortgagee shall be so recorded."

Manifestly, the word "mortgagee" in the last line of this section refers to a transferee in a bill of sale who, by virtue of the understanding that the bill of sale was given as security, becomes a mortgagee.

Prior to the amendment of this statute in 1913, the recording of a mortgage, unaccompanied by the agreement, would probably have been sufficient. Henshaw v. Sumner, 23 Pick. (Mass.) 446. Nor does it seem to me that the amendment, which applies to transfers absolute in form, such as bills of sale, and requires in this connection a written statement of an oral agreement of defeasance, makes it necessary to record with what purports to be a mortgage of personal property, such a simultaneous agreement as exists in this case.

■ Even if the fact that the trust agreement was under seal be disregarded, it constituted a valid obligation, and the mortgage was an appropriate security for it. The petitioners, who held the mortgage in trust, were the proper persons to enforce the lien. Richter v. Jerome, 123 U. S. 233, 8 S. Ct. 106, 31 L. Ed. 132; Palmer v. Bankers' Trust Company (C. C. A.) 12 F.(2d) 747.

From the referee's report it appears that "no evidence was submitted as to what portion, if any, of the after-acquired property of the bankrupt since the date of the mortgage came under the mortgage."

The referee's order dismissing the petition to establish a lien on the funds in the hands of the trustees in bankruptcy is reversed, and the matter recommitted to the referee for further proceedings not inconsistent herewith.

The trustees in bankruptcy excepted to the foregoing ruling, and their exception is noted.